IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JORGE ANDUJAR-ORTIZ,<br><br>**Petitioner**<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>**Respondent.** | **CIVIL NO.** 09-1621 (JAG)<br><br>**CRIM. NO.** 09-086, 06-206(JAG) |

**OPINION AND ORDER**

Garcia-Gregory, D.J.

On July 2009, petitioner Jorge Andujar-Ortiz ("Andujar" or "petitioner") filed a motion requesting *habeas corpus* relief under 28 U.S.C. § 2255 grounded on ineffective assistance of counsel. The matter was referred to a Magistrate Judge for a Report and Recommendation (the "Report"). (Docket No. 13). Petitioner timely filed his objections to the Report. (Docket No. 18). For the reasons discussed below, the Court **ADOPTS** the Report, and accordingly **DENIES** Andujar's petition.

## BACKGROUND

On June 28, 2006, a federal grand jury returned an Indictment charging petitioner with possession, with intent to distribute, of approximately forty-four grams or more of a substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Criminal No. 06-206 (JAG)).

A separate Information, issued on February 2009, charged petitioner with knowing possession of a firearm in furtherance of the commission of a drug trafficking crime. 18 U.S.C. §§ 924(c)(1)(A). The weapon in question was a .45 caliber pistol, Glock Model 30, modified to fire on full-auto. Accompanying the gun were two extended magazines containing forty-one rounds of .45 caliber ammunition.

Thereafter, petitioner and the government reached a plea agreement on these two charges pursuant to Rule 11(c)(1) (A) and (C) of the Federal Rules of Criminal Procedure. (Criminal No. 09-086, Docket No. 4). Petitioner then pled guilty on February 25, 2009 to Count One of the Indictment in Crim. No. 06-206 (JAG); and to the Information in Crim. No. 09-086 (JAG).

On the basis of that stipulation and upon petitioner's plea of guilty, this Court sentenced petitioner on June 16, 2009 to the recommended term of imprisonment of one hundred and twenty

**Civil No.** 09-1621(JAG)                                                         3

months as to Count One, to be served consecutively to the twenty-four month term imposed in Crim. No 06-206, for a total of one hundred and forty-four months of imprisonment. Additionally, the Court imposed a five-year term of supervised release, concurrent with the term imposed in Crim. No 06-206 (JAG).

At his change of plea hearing, the Magistrate Judge specifically asked Andujar whether he truly wanted to plead guilty to the charge contained in Count I of the Information; that is, whether he possessed the .45 caliber pistol "in furtherance of the drug trafficking crime." (See Crim. No. 09-086 (JAG), Docket No. 21, pp. 27-28). Defendant answered in the affirmative. Before moving on, the Magistrate sought to clarify Andujar's answer, stating the following:

> Just a second, please. Now, in order for you to be found guilty of Count I of the Information, the government must prove certain facts or elements against you beyond a reasonable doubt. Number one, the government must prove that on or about June 16, 2006, that you knowingly possessed a firearm and ammunition.
>
> Number two, the government must prove that your possession of the firearm and ammunition was in furtherance of the commission of the drug trafficking crime, namely the possession with intent to distribute heroin as alleged in Count One of the Indictment.
>
> Finally, the government must prove that the drug trafficking crime was a crime that may be prosecuted in a court of the United States. So do you understand what the government must prove against you beyond a

>    reasonable doubt for you to be guilty of Count I of
>    the Information?

(Id.). Again, Andujar answered in the affirmative.

Petitioner did not file an appeal, and as such, his sentence became final on July 1, 2009. Less than five days later, petitioner filed the present § 2255 motion. Upon revisiting his case, petitioner concluded that there was no evidence showing that the seized firearm somehow "furthered" the commission of the predicate offense, given that the .45 caliber pistol was found under a mattress in his room and the seized drugs were found in the kitchen.

Petitioner complains that prior to pleading guilty, his lawyer had failed to explain the nuances of 18 U.S.C. § 924(c)(1)(A).[1] Petitioner submits that, had he known of the weakness in the government's evidence, he would not have pled guilty to a violation of § 924(c).

The government opposes petitioner's request largely on the basis of his statements at the change of plea hearing. The government adds that, upon a knowing and intelligent plea agreement, petitioner Andújar-Ortiz benefitted from being held accountable for a specific amount of narcotics, with a two level reduction for acceptance of responsibility under the sentencing

---

[1] According to petitioner, his lawyer had not advised him on the type and nature of the evidence the government must show in order to prove that he had possessed the gun *in furtherance of* the drug offense.

guideline and the dismissal of the additional charges in Count Two of the Indictment.[2] Petitioner Andújar-Ortiz was sentenced in accordance with the plea agreement and, according to the government, the record is clear in that it shows petitioner's satisfaction with the services of his retained counsel.

After considering the parties' arguments and the record in this case, the Magistrate Judge concluded that the government's evidence was sufficient to sustain a conviction under § 924(c). Thus, the Magistrate Judge determined that petitioner's counsel did not render ineffective assistance of counsel because his pre-plea advice to petitioner was consistent with the law.

## ANALYSIS

Sufficiency of the Evidence

In a nutshell, petitioner contends that the government did not have sufficient evidence to convict him under § 924(c). Petitioner's argument reflects a fundamental misconstruction of both the law and the facts present in this case. In an effort to clear things up, the Court will briefly summarize the history of § 924(c) as well as Congress' 1998 amendment to the statute.

---

[2] Count Two charged possession of a fully automatic weapon during and in relation to a drug trafficking crime. Count Three charged possession of ammunition, and of a fully automatic weapon by a convicted felon.

**Civil No.** 09-1621(JAG)                                                      6

Prior to 1998, § 924(c)(1) "[required] the imposition of specified penalties if the defendant, 'during and in relation to any crime of violence or drug trafficking crime ..., uses or carries a firearm.'" Bailey v. U.S., 516 U.S. 137, 142-43 (1995)(citing the pre-1998 version of § 924(c)). Thus, a defendant could be held liable under this section if he either used or carried a weapon during and in relation to a drug-trafficking crime.

The Bailey Court gave the term "use" a narrow reading. The Court acknowledged, as had been frequently found by other courts, that mere possession of the firearm was insufficient to meet § 924(c)'s standard. However, the Court went further and held that "[t]o sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." Bailey, 516 U.S. at 150. In Bailey's case, the drugs were found in the cabin of his car, while the weapon was locked in the trunk. Given the distance between the weapon and the drugs, and the fact that there was no evidence showing that Bailey had "actively employed" the weapon in any way, the Court vacated his conviction.

In response to Bailey, Congress amended § 924(c)(1)(A) in 1998. The new language added the "possession in furtherance of"

requirement, reflecting Congress' intent to include defendants who had not actively employed weapons in their drug crimes. Thus, the 1998 amendment presents a pivotal point in how courts have applied § 924(c). Unfortunately, every case cited in petitioner's motion on this point was decided prior to 1998 and dealt with convictions under the "use" or "carry" prongs of § 924(c). Petitioner thus errs in selecting the proper standard of law applicable to his claim.

We turn to recent First Circuit caselaw for guidance on this analysis. In <u>United States v. Pena</u>, 586 F.3d 105, 112 (1st Cir. 2009), the First Circuit stated that in order to sustain a conviction under § 924(c)(1)(A), "the government must prove that the defendant: 1) committed a drug trafficking crime; 2) knowingly possessed a firearm; and 3) possessed the firearm in furtherance of the drug trafficking crime." <u>Id.</u> at 419. Petitioner does not contest that he committed a drug trafficking crime or that he knowingly possessed a firearm. However, petitioner maintains that the government did not have sufficient evidence to show that his possession of the handgun somehow furthered the drug trafficking crime for which he was convicted.

To prove this third prong, the government must submit more than the simple presence of the weapon in the area where the drug offense occurred. <u>United States v. Grace</u>, 367 F.3d 29, 34-

35 (1st Cir. 2004); see also U.S. v. Felton, 417 F.3d 97 (1st Cir. 2005). Rather, the government must demonstrate a sufficient nexus between the firearm and the drug crime such that the firearm helped "facilitate, forward, advance or promote" that crime. Felton, 417 F.3d at 104; Pena, 586 F.3d at 114 (citing United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008)); see e.g. United States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007)(finding that the possession of the gun *to protect* drugs or proceeds is sufficient to establish required nexus); U.S. v. Grace, 367 F.3d 29, 37 (1st Cir. 2004)(same).

In deciding whether the firearm "furthered" the predicate drug offense, a court must scrutinize the government's evidence from both an objective and subjective perspective.[3] Marin, 523 F.3d at 27. Objectively, the "proximity of the firearm to the contraband" is a strong indication that a defendant's possession of that weapon furthered the commission of the drug offense. Id. Thus, the First Circuit has found evidence sufficient "where an unloaded firearm was found in the same residence as drugs and sales proceeds," Grace 367 F.3d at 27; and where a gun was found

---

[3] The record here does not suggest any facts that would favor or disfavor a finding of "subjective intent" by petitioner to possess the weapon in furtherance of the crime. However, "[w]here direct evidence of subjective intent is lacking, the jury is free to infer intent from objective circumstances." Marin, 523 F.3d at 28. As we will see below, the objective circumstances at play are sufficient to overwhelm petitioner's contentions.

in a crawlspace alongside drugs and associated paraphernalia. United States v. Luciano, 329 F.3d 1 (1st Cir. 2003).

Yet, this inquiry is not limited to assessing the distance between the gun and the drugs. Courts have also found relevant "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." U.S. v. Ceballos-Torres 218 F.3d 409, 414 (5th Cir. 2000); U.S. v. King, 632 F.3d 646 (10th Cir. 2011). These factors allow a court to distinguish between firearms that are used for "target shooting or hunting game," or merely "unloaded antiques mounted on the wall," from those that further the commission of a drug offense. Ceballos-Torres, 218 F.3d at 415.

Before pressing on, we note that in determining whether petitioner's guilty plea was supported by sufficient evidence, the question before the court "is not whether a jury would, or even would be likely, to convict: it is whether there is enough evidence so that the plea has a rational basis in facts that the defendant concedes or that the government proffers as supported by credible evidence." Gandia-Maysonet, 227 F.3d 1, 6 (1st Cir. 2000). In other words, there must be "an admission, colloquy,

proffer, or some other basis for thinking that the defendant is at least arguably guilty." Id. With this in mind, we turn to the facts.

As the Magistrate Judge found, state agents seized from Andujar's kitchen a large amount of heroin, contained in four bags and six decks. (Docket No. 13, p. 9). In the bedroom, agents found drug paraphernalia in petitioner's dresser. Specifically, agents recovered a grinder, strainer, box of syringes, whetting stone, aluminum wraps and rolls, a scale, and several small plastic bags. (Id. at p.9). According to the affidavit in support of the arrest warrant, agents also recovered in the bedroom a duffel bag containing a two-way radio, a drug cutting agent, and $750 cash. (Criminal No. 06-206 (JAG), Docket No. 1-2, ¶ 3). Furthermore, underneath the mattress of petitioner's bed, agents found the firearm in question: a Glock Model 30, .45 caliber pistol, and extended magazines containing 41 rounds of .45 caliber ammunition. According to the affidavit, Andujar admitted at the time of his arrest that the seized weapon was fully automatic. (Id. at ¶ 7).

Petitioner argues, in essence, that the distance between the gun and the drugs is enough to preclude the government from proving that he possessed the firearm in furtherance of the drug offense. In particular, petitioner states that there is no

evidence: 1) that he kept or distributed drugs in his bedroom; 2) he kept his gun accessible while conducting drug transactions; and that 3) there was no ongoing drug transaction at the time the items were seized. Thus, petitioner concludes that the government did not have sufficient evidence to establish that the gun somehow "furthered" the drug trafficking crime for which he was convicted.

The key in this analysis is to determine whether the possession of the gun furthered the underlying drug *offense*. Here, that offense involved the possession, with intent to distribute, of a determined amount of heroin. Thus, the question becomes: did the firearm assist petitioner in his drug trafficking enterprise?

It is evident that the paraphernalia found in the bedroom was not meant for personal use; rather, the items seized are those typically used to carry out drug crimes (e.g., scale, cutting agent, empty plastic bags and so forth). Defendant's plea of guilty as to the underlying drug trafficking crime confirms this view. Given that the tools of the drug trade were found near the gun, the inference surely arises that the gun advanced petitioner's interests in his drug business. United States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007)(finding that the possession of the gun *to protect* drugs or proceeds is

sufficient to establish required nexus). This provides a sufficient and rational basis to conclude that defendant possessed the gun not only to protect the proceeds and tools found in his room, but also the drugs found in the kitchen.

As noted above, we need not limit ourselves to the proximity analysis. For instance, it is clear that the gun in question here was not merely an antique mounted on the wall. While a handgun need not be loaded or operational to qualify as a 'firearm' for purposes of § 924(c), Grace, 367 F.3d at 36, defendant was caught with a fully-automatic pistol and two extended ammunition clips loaded with large caliber bullets. Furthermore, a cursory review of the record seems to indicate that petitioner was not in legal possession of the firearm. And finally, though at the time of his arrest the gun was found underneath his mattress, it is not unreasonable to surmise that the weapon was at defendant's disposition whenever he carried out a drug transaction. Defendant had control of the apartment and could have the gun in his hands at a moment's notice. Again, the circumstances show that in all likelihood, petitioner possessed the firearm in order to advance and protect his drug enterprise.[4]

---

[4] Under the "carry" prong of the statute, the First Circuit has held that the "defendant's sole purpose in carrying the weapon need not have been facilitation of the drug trafficking crime."

Our research has uncovered several cases which sustain convictions under § 924(c)(1)(A) under similar circumstances as those present in Andujar's case. For instance, in Marin, agents found a firearm and loaded spare clip under the mattress in the defendant's bedroom. Marin, 523 F.3d at 28. A few feet away, agents seized 75 grams of cocaine, as well as a digital scale. Id. In other parts of the house, agents found 700 grams of cocaine, as well as proceeds from drug sales. With these facts, the First Circuit had "*little doubt* that a jury could have reasonably inferred from this evidence that [defendant] possessed the firearm to protect his drug trafficking activities." Id. (our emphasis). In our view, these facts would also be sufficient to sustain a guilty plea even if agents had not found the 75 grams of cocaine beside the weapon.[5] On the other hand, in U.S. v. Felder, the Third Circuit found evidence sufficient to convict where the firearms recovered were found under the bed of defendant in close proximity to drugs, paraphernalia and pre-marked bills used in connection with drug trafficking. U.S. v. Felder, 389 Fed. Appx. 111 (3d Cir. 2010).

---

U.S. v. Payero, 888 F.2d 928, 929 (1st Cir. 1989). In the Court's opinion, the same reasoning applies here, given that the "in furtherance" requirement imposes no additional limitation.

[5] In Marin, the First Circuit reviewed the sufficiency of the evidence presented at trial. Here, however, defendant pled guilty. As stated above, our review is limited to determining whether the guilty plea is supported by a rational basis in fact.

**Civil No.** 09-1621(JAG)                                                                14

In reaching this conclusion, the <u>Felder</u> court emphasized that defendant, a convicted felon, could not have possessed firearms lawfully.

Thus, the Court finds that the government's evidence was sufficient to sustain a conviction under 18 U.S.C. § 924(c)(1)(A). This finding deflates petitioner's claim of ineffective assistance of counsel: petitioner cannot show that his legal representation fell below an objective standard of reasonableness, for the advice received was entirely consistent with the requirements of the law. See <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)(to show ineffective assistance of counsel, petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced).

## CONCLUSION

In conclusion, the Court finds that there is a plainly rational basis in the government's evidence to sustain petitioner's guilty plea. As such, petitioner's claim that his counsel was ineffective falls short of the mark. Therefore, the Court hereby ADOPTS the recommendation made by the Magistrate Judge and DENIES petitioner's Motion to Vacate, Set Aside or Correct Sentence under § 2255. (Docket No. 3).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of April, 2012.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
